UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HARD ROCK TILE & STONE,<br><br>　　　　　　　　　　Defendant. | Case No.: 20cv1009 JM (BLM)<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT, MOTION TO JOIN NECESSARY PARTY, AND REQUEST FOR ADDITIONAL BRIEFING** |
| HARD ROCK TILE & STONE,<br><br>　　　　　　　Third-Party Plaintiff,<br><br>v.<br><br>PRIMESTATE INSURANCE AGENCY, INC., dba WESTERN UNITED COMMERCIAL INSURANCE SERVICES,<br><br>　　　　　　　Third-Party Defendant. | |

　　　　Presently before the court is Plaintiff U.S. Specialty Insurance Company ("USSIC")'s Motion for Partial Summary Judgment (Doc. No. 43), Third-Party Defendant Primestate Insurance Agency, Inc. dba Western United Insurance Services ("Western United")'s Motion for Summary Judgment, or in the alternative, Partial

Summary Judgment (Doc. No. 45), and Defendant Hard Rock Tile & Stone ("Hard Rock")'s Motion to Join Necessary Party (Doc. No. 53). The motions have been fully briefed and the court finds them suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the court **GRANTS** USSIC's Motion and **DEFERS** consideration of Western United's Motion for Summary Judgment and Hard Rock's Motion to Join Necessary Party pending the resolution of questions regarding the court's subject matter jurisdiction.

# BACKGROUND

I.   Factual Background

This action arises out of USSIC's rescission of Hard Rock's Artisan Contractors Liability Insurance policy, based on Hard Rock's alleged failure to accurately disclose whether it operates a "store front."

A.   Hard Rock's Application for Artisan Contractors Liability Insurance

Hard Rock is a "retail seller of tile and stone and also an installer of these products." (Doc. No. 10 at ¶ 5). Hard Rock is owned solely by Tom Cruse. (Doc. No. 47-2 at ¶ 24). Since January 2016, Hard Rock has operated a "retail store" that is staffed seven days a week with a salesperson, where a customer can purchase tile. (Doc. Nos. 47-2 at ¶ 9; 52-1 at ¶ 11). Retail sales make up approximately half of Hard Rock's sales. *Id.*

On or about November 2016, Hard Rock sought a proposal from Western United for insurance coverage. *Id.* at ¶ 1. On or about December 5, 2016, Western United prepared and submitted an HCC Artisan Application for Artisan Contractors Liability Insurance ("Artisan Application"), on behalf of Hard Rock, to USSIC. (Doc. Nos. 47-2 at ¶ 1; 43-4 at 2-5). The Application contains the following question and answer:

> 16) Has or will the applicant operate a store front?
> No.

(Doc. No. 43-4 at 3).

The Application states 100% of Hard Rock's business is as a "Tile and Stone Installation Contractor." *Id.* at 2. The Application was signed by Mr. Cruse. *Id.* at 4-5.

The Application contains the following language:

> BY SIGNING THIS APPLICATION, THE APPLICANT WARRANTS AND REPRESENTS THAT EACH OF THE FACTS AND REPRESENTATIONS CONTAINED IN THIS APPLICATION, ALONG WITH ALL OTHER INFORMATION SUPPLIED BY OR ON BEHALF OF THE APPLICANT, ARE TRUE, COMPLETE AND ACCURATE. IT IS FURTHER UNDERSTOOD THAT THE APPLICANT'S SIGNATURE IS BINDING WITH RESPECT TO ALL FUTURE APPLICATIONS AND/OR RENEWALS.
>
> …
>
> THE APPLICANT UNDERSTANDS THAT ANY MISREPRESENTATIONS OR OMISSIONS SHALL CONSTITUTE GROUNDS FOR RECISSION OF COVERAGE AND DENIAL OF CLAIMS.

*Id.* at 4.

USSIC subsequently issued Commercial General Liability Policy No. U16AC95298-00, effective December 7, 2016, through December 7, 2017, to Hard Rock. (Doc. No. 43-5). The policy was renewed three times.[1] (Doc. Nos. 47-2 at ¶ 7; 43-6, 43-7; 43-8).

### B. Hard Rock Submits a Claim

On or about March 29, 2020, Hard Rock submitted a General Liability Notice of Occurrence/Claim to USSIC for injuries and damages claimed by a customer, Fouzia Jami, at Hard Rock's retail store. (Doc. Nos. 43-2 at 4; 47-2 at ¶ 9). Ms. Jami was allegedly injured while shopping at Hard Rock's store. *Id.*

---

[1] Policy No. U17AC95298-01, effective December 7, 2017, through December 7, 2018, Policy No. U18AC95298-02, effective December 7, 2018, through December 7, 2019, and Policy No. U19AC95298-03, effective December 7, 2019 through December 7, 2020.

A general adjustor, Nikki Bardell, was assigned to investigate Hard Rock's claim. (Doc. No. 43-2 at 1-2 ("Bardell Decl.") at ¶ 1). During her investigation, Ms. Bardell exchanged a number of e-mails with Mr. Cruse. Of relevance, in an April 21, 2020 e-mail correspondence, Ms. Bardell asked Mr. Cruse "[w]hen did you open the store front for Hard Rock Tile & Stone?" and indicated she needed "to confirm with USSIC Underwriting if the policy was intended to cover the store front." (Doc. No. 43-2 at 8). Mr. Cruse responded on April 22, 2020 that "[i]t was January 1st, 2016." *Id.*

On May 14, 2020, Ms. Bardell sent a follow-up e-mail to "confirm a few details about the store front so coverage can be finalized." *Id.* at 7. Ms. Bardell specifically asked whether Hard Rock's "showroom" was "always present from the day" the store was opened. *Id.* Mr. Cruse responded, via email on the same day, that "[t]he showroom has always been present from the day [the store] opened." *Id.*

**C.   USSIC Rescinds the Policy**

On June 1, 2020, USSIC sent a letter to Hard Rock rescinding Hard Rock's insurance policy and denying coverage of Ms. Jami's claim. (Doc. Nos. 47-2 at ¶ 12; 43-9 at 41-44). As the basis for its decision, USSIC's letter provided that:

> Prior to U.S. Specialty issuing its first policy of insurance to Hard Rock Tile & Stone, Tom Cruse signed an Artisan Application for insurance which answered "'No" to the question of whether Hard Rock Tile & Stone would be operating a storefront. By way of email from Mr. Cruse on May 14, 2020, it has been confirmed that the Storefront was in fact open and operational at the time the Artisan Application was submitted and at all times since then.
>
> Accordingly, the originating U.S. Specialty policy and all renewals thereof were issued based on material misrepresentations contained in the Artisan Application. On that basis, U.S. Specialty denies coverage for the claim relating to injuries suffered by Ms. Fouvia, and hereby provides notice of the Rescission Action to rescind all policies of insurance issued to Hard Rock Tile & Stone.

(Doc. No. 43-9 at 42).

USSIC enclosed with this correspondence a check in the amount of $3,330.00, representing all premiums paid by Hard Rock not previously returned. (Doc. No. 47-2 at ¶ 13). The correspondence also included a copy of USSIC's Complaint in the instant action to enforce the rescission. (*Id.* at ¶ 14).

## II.  Procedural Background

On June 1, 2020, USSIC filed a Complaint against Hard Rock asserting causes of action for rescission and declaratory judgment. (Doc. No. 1). On July 10, 2020, Hard Rork filed counterclaims against USSIC for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. (Doc. No. 9). On the same day, Hard Rock filed a Third-Party Complaint against Western United asserting causes of action for professional negligence and negligent misrepresentation. (Doc. No. 10).

On August 11, 2020, USSIC filed an Amended Complaint asserting causes of action for rescission and declaratory judgment against Hard Rock and causes of action for equitable indemnity and equitable contribution against Western United. (Doc. No. 17). On November 18, 2020, Western United filed counterclaims against USSIC, also for equitable indemnity and equitable contribution. (Doc. No. 30).

On June 22, 2021, USSIC filed its Motion for Partial Summary Judgment against Hard Rock. (Doc. No. 43). Hard Rock filed a Response (Doc. No. 47) and USSIC filed a Reply (Doc. No. 49).

On June 28, 2021, Western United filed its Motion for Summary Judgment against Hard Rock. (Doc. No. 45). Hard Rock filed a Response (Doc. No. 48) and Western United filed a Reply (Doc. No. 52).

On August 3, 2021, Hard Rock filed a Motion to Join Necessary Party (Doc. No. 53).

///

///

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. The question is "whether a jury could reasonably find either that the [moving party] proved [it's] case by the quality and quantity of evidence required by the governing law or that [it] did not." *Id.* "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor." *Id.* at 255. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-248.

## ANALYSIS

### I.   USSIC's Motion for Partial Summary Judgment

#### A.   Rescission of an Insurance Contract

A rescission is affected under California law "by giving notice of rescission and restoring, or offering to restore, everything of value received under the contract." *S. Ins. Co. v. Workers' Comp. Appeals Bd.*, 11 Cal. App. 5th 961, 971 (2017) (citing Cal. Civ. Code § 1691). Once a contract has been rescinded, "any party to the contract may seek legal or equitable relief based upon the rescission." *Id.*

Under the California Insurance Code, an insurer is entitled to rescind a policy if the insured has concealed or misrepresented material facts in its insurance application. *See* Cal. Ins. Code § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); § 359 ("If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the

contract from the time the representation becomes false."); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1266-67 (2007) ("When a policyholder conceals or misrepresents a material fact on an insurance application, the insurer is entitled to rescind the policy."). "The burden of proof is on the insurer to establish misrepresentation or concealment." *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 416 F. Supp. 2d 802, 810 (N.D. Cal. 2006) (citing *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 909, 919 (1973)).

### B. Principles of Contractual Interpretation

"Construction of an insurance policy is governed by state law." *Humboldt Bank v. Gulf Ins. Co.*, 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004). Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006). A court is to interpret words in an insurance policy "according to the plain meaning that a layperson would attach to them." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982)).

### C. Did Hard Rock Make a Material Misrepresentation?

To prevail on its rescission claim, USSIC must prove that Hard Rock, "whether intentionally or not, made a misrepresentation" in its insurance application and USSIC "would not have issued the policy" if Hard Rock "had not made that misrepresentation." *Duarte v. Pac. Specialty Ins. Co.*, 13 Cal. App. 5th 45, 57 (2017).[2]

---

[2] Although Hard Rock maintains it was Western United that prepared and submitted the Artisan Application on Hard Rock's behalf, for the purposes of USSIC's rescission action, this fact is irrelevant. "Representations in an insurance application prepared by an insurance broker on behalf of an insured are attributed to the insured as a matter of law." *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 181 Cal. App. 4th 175, 192 (2010); *LA Sound*, 156 Cal. App. 4th at 1268 ("As a matter of law, 'if [an insurance] application was prepared by an insurance broker (the agent of the insured), the application's contents are the insured's responsibility[.]'").

USSIC argues Hard Rock made a material misrepresentation by answering "no" to Question No. 16 of the Artisan Application—which asks: "[h]as or will the applicant operate a store front?" (Doc. No. 43 at 10). In response, Hard Rock argues the term "store front" as used in Question No. 16 is ambiguous in that an applicant could have interpreted it as asking about "the front or entryway of a store," "the front or side of a store facing a street," "the front or side of a store with display windows" or "the front or side of a store with display windows facing a street." (Doc. No. 47 at 12).

Whether the language in a contract is ambiguous is a question of law. *Castro v. Fireman's Fund Am. Life Ins. Co.*, 206 Cal. App. 3d 1114, 1119 (1988). "A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014). However, courts should not "strain to create am ambiguity where none exists." *Id.* (quotations omitted). Rather, the language at issue "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 916 n.7 (1986). If the policy is ambiguous, the ambiguity is generally resolved "in accordance with the objectively reasonable expectations of the insured." *Farmers Ins. Exch. v. Knopp*, 50 Cal. App. 4th 1415, 1417 (1996). "These principles apply likewise to the questions in an application prepared by an insurer." *Duarte*, 13 Cal. App. 5th at 54.

Here, it is undisputed Hard Rock has operated a "retail store" since January 2016, that is staffed with a salesperson seven days a week, where a customer can select and purchase tile. (Doc. Nos. 47-1, Ex. 1 at 16:1-3, 16:23-17:4; 48-1 at ¶ 11). The issue before the court is whether the term "store front" is susceptible to more than one reasonable interpretation such that Hard Rock could have concluded its "retail store" or "showroom" did not qualify. This question "must be answered through the eyes of a

reasonable person in the position of the insured." *Jordan v. Allstate Ins. Co.*, 116 Cal. App. 4th 1206, 1214 (2004).

Applying the principles of contractual interpretation, the court perceives no ambiguity in the term "store front" as it is used in the Artisan Application. Question No. 16 clearly calls for a "yes" response if the applicant maintains a location where customers may enter and purchase goods.

Hard Rock fails to delineate any other reasonable interpretation of this term. Instead, relying on various dictionary definitions of "store front," Hard Rock argues it is reasonable Hard Rock's "retail store" would not qualify because it: (1) does not face a road or street; (2) does not have frontage on a street or thoroughfare; and/or (3) does not have display windows. (Doc. No. 47 at 11).

"In looking to dictionary definitions, however, courts must take care to consider the policy context in which the word or term was used and attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the particular language." *Jordan*, 116 Cal. App. 4th at 1216. In this case, the potential meanings Hard Rock ascribes to "store front" are not within "the objectively reasonable expectations of the insured." Instead, Hard Rock's argument that a "store front" encompasses retail stores with certain specific physical characteristic—but not others—defies common sense. *Mitroff v. United Servs. Auto. Ass'n*, 72 Cal. App. 4th 1230, 1239 (1999) (the court "does not abandon common sense when reading an insurance policy."). At a minimum, Hard Rock's interpretation relies on hyper-technical distinctions between a "retail store" and a "store front" that emphasizes form over substance.

The unwieldiness of Hard Rock's interpretation becomes even more clear when its full implications are considered. Under Hard Rock's proposed construction, *any* retail store located within a mall or other interior space is not a "store front" because it does not directly face a road or street. However, a retail store located outside might qualify, *but only so long* as the store faces a street. Hard Rock's definition further excludes any retail

stores that do not have windows.  A store *with* windows would nevertheless qualify, *but only so long* as those windows act as "display windows."

Hard Rock does not cite to any legal authority allowing the court to make these narrow distinctions and the court declines to engage in a strained interpretation of this term to fabricate an ambiguity where none exists.  *See Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 827 (9th Cir. 1957) ("[A] court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract.").  The "mere assertion" by Hard Rock of an interpretation that is different from USSIC's "does not give rise to an ambiguity; rather, [Hard Rock]'s proffered interpretation must be acceptable by reasonable people." *Sully-Jones Contractors, Inc. v. Am. Safety Indem. Co.*, No. 08-CV-1976 BEN AJB, 2010 WL 1839114, at *3 (S.D. Cal. May 6, 2010).

Indeed, Hard Rock's claim the term "store front" is ambiguous is not supported by the evidence.  On April 21, 2020, during the investigation of Hard Rock's claim, Ms. Bardell e-mailed Hard Rock's owner, Mr. Cruse, the following inquiry:

> When did you open the store front for Hard Rock Tile & Stone?
> I will need to confirm with USSIC Underwriting if the policy was intended to cover the store front.

(Doc. No. 43-2 at 8).  Mr. Cruse did not ask Ms. Bardell to clarify the meaning of "store front" in her e-mail.  Instead, he simply responded: "[i]t was January 1, 2016." *Id.* Mr. Cruse further testified it was his understanding a "store front" meant the "front of a store" and a "store" is "where items can be purchased."  (Doc. No. 47-1, Ex. 1 at 141:20-142:1).[3]  Al Feke, the broker at Western United who filled out Hard Rock's application,

---

[3] Although Mr. Cruse also submitted a declaration stating he "considers the Miramar Road property to be a showroom rather than a storefront" (Doc. No. 47-1 at ¶ 6), as USSIC correctly notes, "[a] party's subjective intent cannot be used to create an

also testified it was his understanding a "store front" is a "retail location." (Doc. No. 47-1, Ex. 2 at 24:20-25:1).

Hard Rock's interpretation of "showroom" is further strained given the full context of the Artisan Application. For example, Question No. 9 of the Application asks: "[h]as or will the applicant perform *any work* other than work as a Tile and Stone Installation Contractor?" to which Hard Rock responded in the negative. (Doc. No. 43-4 at 3). Hard Rock also reported that 100% of its operation was as a "Tile and Stone Installation Contractor," despite the fact it is undisputed it operated a retail store. (Doc. Nos. 43-4 at 2; 48-1 at ¶ 11). It is evident these questions were designed to determine if Hard Rock performed any operation other than as an installation contractor (such as a retail store), as the Artisan Contractors Liability Insurance program "is designed for installation contractors and not designed for companies that work out of a retail storefront." (Doc. No. 43-9, Ex. 2 at 12:9-12).

In its Opposition, Hard Rock argues Question No. 16 could have simply inquired whether the applicant operated a "store" or "retail store." (Doc. No. 47 at 12). This proposal is irrelevant. The only relevant inquiry is whether Question No. 16, as drafted, is unambiguous. The court concludes that it is. And although it is true, as Hard Rock suggests, that any ambiguities must be resolved against USSIC, "[t]his rule of construction is applicable only when the policy language is found to be unclear." *Am. Inernat. Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co.,* 181 Cal. App. 4th 616, 629 (2010).

There is no triable dispute Hard Rock's response to Question No. 16 was material. It is undisputed USSIC relied on Hard Rock's response in issuing Hard Rock's policies. (Doc. No. 47-2 at ¶ 8). There is also no genuine dispute that if Hard Rock *had* answered

---

ambiguity or a material factual issue." *Havstad v. Fid. Nat'l Title Ins. Co.*, 58 Cal. App. 4th 654, 661 (1997)

"yes" during the application process, the Application would have been rejected. In support of this fact, USSIC proffered the declaration of David Boatman, who oversaw the division responsible for underwriting the policies issued to Hard Rock. (Doc. No. 43-3 at 1-4 ("Boatman Decl.") at ¶ 1). Mr. Boatman declared that had USSIC been made aware of Hard Rock's retail store front operation, USSIC would not have issued the policies to Hard Rock because: (1) a store front is an ineligible operation under the Artisan Contractors Liability Insurance program; and (2) USSIC is precluded from issuing insurance policies covering store front operations. Boatman Decl. at ¶ 9. Indeed, Hard Rock does not dispute USSIC cannot issue insurance coverage for store front operations. (Doc. No. 47-2 at ¶ 18).

For these reasons, the court **GRANTS** USSIC's motion for partial summary judgment.[4]

### III. Jurisdictional Issues

Before addressing Western United's Motion for Summary Judgment and Hard Rock's Motion to Join Necessary Party, the court must first consider whether it has subject matter jurisdiction to address the Parties' remaining claims in light of its decision above. *See Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (the court has an independent obligation to address whether it has subject matter jurisdiction); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

#### A. USSIC's Request for Declaratory Relief

In this jurisdictional inquiry, the court first considers USSIC's second cause of action for declaratory relief. In its second cause of action, "[USSIC] seeks a declaration that it is not obligated to provide coverage to Hard Rock for the claims being made by Ms. Fouvia." (Doc. No. 17 at ¶ 25 (emphasis added)).

---

[4] Having found a sufficient ground for relief, the court does not discuss the other alleged misrepresentations USSIC identifies in its Motion.

Article III of the United States Constitution "restricts federal courts to the resolution of cases and controversies," *Davis v. FEC*, 554 U.S. 724, 732 (2008), and requires that "a justiciable case or controversy must remain extant at all stages of review," *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011). "A case that becomes moot at any point during the proceedings is 'no longer a 'Case' or 'Controversy' for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018).

Because the court has already decided the merits of USSIC's rescission action, USSIC's request for declaratory judgment appears moot and the court appears to lack jurisdiction over this claim. "[A] rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable." *LA Sound USA, Inc.*, 156 Cal. App. 4th at 1267. The Declaratory Judgment Act "is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see Bartlett v. Overslaugh*, 169 F. Supp. 3d 99, 110 (D.D.C. 2016) ("[A] court may dismiss as moot a claim for declaratory relief where . . . the claim duplicates or is wholly subsumed by another claim that has been dismissed.").

### B. Hard Rock's Counterclaims against USSIC and USSIC and Western United's Claims for Equitable Indemnity and Equitable Contribution

The court has similar jurisdictional concerns over Hard Rock's counterclaims against USSIC. Here, Hard Rock has asserted counterclaims against USSIC for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief. (Doc. No. 9).

However, Hard Rock cannot maintain an action for breach of contract, breach of the implied covenant of good faith or fair dealing, or declaratory relief, in the absence of a contractual relationship. *See LA Sound USA, Inc.*, 156 Cal. App. 4th at 1266 ("A policy void *ab initio* [] cannot be breached."); *Am. Gen. Life Ins. Co. v. Valentine*, No. LACV1608097JAKJCX, 2017 WL 5635014, at *8 (C.D. Cal. Apr. 13, 2017) ("[A]

13

breach of the covenant of good faith and fair dealing cannot arise in the absence of a contractual relationship[.]"). Likewise, USSIC and Western United's claims against one another for equitable indemnity and equitable contribution are closely tied to Hard Rock's counterclaims. Both appear dependent on Hard Rock prevailing on its counterclaims. (Doc. Nos. 17 at ¶¶ 28-31; 30 at ¶¶ 16-19). For these reasons, these claims also appear moot, and the court now lacks jurisdiction over them.

### C. Hard Rock's Third-Party Complaint

The crux of the remaining dispute between the Parties is Hard Rock's Third-Party Complaint against Western United for professional negligence and negligent misrepresentation. Here, Hard Rock is a sole proprietorship with its principal place of business in San Diego, California. (Doc. No. 10 at ¶ 1). Western United is a California corporation with its principal place of business in San Clemente, California. *Id.* at ¶ 2. Because all Parties to the Third-Party Complaint are California citizens, the court lacks diversity jurisdiction. Hard Rock's Third-Party Complaint instead asserts the court has supplemental jurisdiction. *Id.* at ¶ 3.

However, having granted partial summary judgment in favor of USSIC on USSIC's rescission claim, the court has effectively disposed of all claims over which it had original jurisdiction and may decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Pa. Manufacturers' Ass'n Ins. Co. v. Trans Am., LLC,* No. EDCV 18-989 DSF (SPx), 2019 U.S. Dist. LEXIS 98847, at *2 (C.D. Cal. June 12, 2019) (declining supplemental jurisdiction after having granted summary judgment and dismissing all claims over which the court had original jurisdiction).

Here, the court is mindful the "primary responsibility for developing and applying state law rests with the state courts." *Curiel v. Barclays Cap. Real Est. Inc.*, No. CIVS093074 FCD/KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010) (declining to exercise supplemental jurisdiction after dismissal of federal claims). And "[i]n the *usual*

case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994). There is nothing in the record to suggest that this case is unusual. For these reasons, at this stage of the proceedings, the court is not inclined to exercise supplemental jurisdiction over Hard Rock's Third-Party Complaint.

## CONCLUSION

For the above stated reasons, the court **GRANTS** USSIC's Motion for Partial Summary Judgment. The Parties are **ORDERED** to meet and confer and file a joint brief no more than **fifteen pages in length** or separate briefs no more than **five pages in length** addressing the court's jurisdictional concerns by no later than **September 20, 2021**.

The court **DEFERS** consideration of Western United's Motion for Summary Judgment (Doc. No. 45) and Hard Rock's Motion to Join Ms. Jami as a Necessary Party (Doc. No. 53) until questions regarding the court's subject matter jurisdiction are resolved. For these reasons, the court **VACATES** all remaining pre-trial deadlines and hearings in this case subject to resetting.

**IT IS SO ORDERED.**

DATED: September 7, 2021

_____
JEFFREY T. MILLER
United States District Judge